**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **M.H., E.S., L.S., W.S., and D.H.**

**No. 21-0327** (Harrison County 18-JA-99-1, 18-JA-100-1, 18-JA-101-1, 18-JA-102-1, and 19-JA-56-1)

# MEMORANDUM DECISION

Petitioner Mother A.H., by counsel Jenna L. Robey, appeals the Circuit Court of Harrison County's April 8, 2021, order terminating her parental rights to M.H., E.S., L.S., W.S., and D.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem, Julie N. Garvin, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues the circuit court erred in erred in denying her motion for reunification and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2018, the DHHR filed a child abuse and neglect petition alleging that petitioner failed to supervise the children and failed to provide them a safe and sanitary home. The DHHR further alleged that petitioner abused substances, educationally neglected then eight-year-old M.S., and physically abused then-five-year-old E.S. Specifically, the DHHR maintained that in July of 2018, petitioner struck E.S. so hard that his head struck a doorframe, and he suffered a laceration that required stitches. Petitioner refused to provide medical treatment for the child and the child's father had to come to the house and take him to the hospital. During the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

same incident, petitioner left the remaining four children, including an infant, completely unsupervised in the home after she left the residence. Some of the children reported witnessing the abuse. As a result, petitioner was arrested for child abuse causing injury but was released on bond. The DHHR also noted that petitioner had over fourteen previous referrals and/or safety plans with Child Protective Services ("CPS") in different counties dating back to the birth of the oldest child, M.S., in 2011. The CPS history referenced domestic violence, substance abuse, failure to supervise, unstable housing, poor hygiene, unsanitary living conditions, lack of food, medical neglect, truancy, and untreated mental health issues. Six of the referrals occurred in 2018 alone and largely concerned then-four-year-old L.S. and then-two-year-old W.S. wandering the streets in various neighborhoods while petitioner slept all day. Thereafter, petitioner waived her preliminary hearing, and the court ordered her to submit to drug screens.

After various continuances and petitioner's completion of her parental fitness and psychological evaluation in January of 2019, the circuit court convened an adjudicatory hearing in February of 2019, wherein petitioner stipulated to the allegations contained in the petition. The circuit court accepted her stipulation and adjudicated her as abusing parent.[2] The DHHR filed a second amended petition in April of 2019 after petitioner gave birth to D.H. Petitioner moved for a post-adjudicatory improvement period, which was granted in April of 2019, without objection from the parties. As terms of her improvement period, petitioner was ordered to participate in random drug screening, intensive therapy, and supervised visitation with the children. Additionally, petitioner was required to obtain and maintain stable housing and employment. In June of 2019, the circuit court held an adjudicatory hearing on the second amended petition. Petitioner stipulated to the allegations contained in that petition, and the circuit court adjudicated her as an abusing parent to D.H.

In December of 2019, the circuit court granted petitioner an extension to her improvement period, and the children were placed in petitioner's physical custody in an attempt to reunify the family.[3] Thereafter, CPS workers monitored the home and received three referrals over the course of six months while the children were living with petitioner. In July of 2020, the DHHR removed the children after substantiating the third referral concerning then-three-year-old W.S. wandering around the neighborhood unsupervised and petitioner's continued substance abuse. The same month, the court held a hearing on the children's removal from petitioner's care and stressed its concern with the length of time the case had been pending.

The circuit court held contested final dispositional hearings in October and December of 2020. The DHHR moved to terminate petitioner's parental rights and presented evidence that petitioner had not been fully compliant with the terms and conditions of her improvement periods. The DHHR showed that petitioner was required to submit to drug screens at the day report center. Although petitioner submitted to drug screens from October of 2018 through

---

[2]That same month, the DHHR amended the petition to include the father of E.S., L.S., and W.S. as a respondent parent.

[3]All children were placed with petitioner except D.H., who remained in the care of her foster family, with whom she had been placed since birth.

March of 2020, petitioner failed to drug screen again until September of 2020, despite the fact that the day report center remained open during the COVID-19 pandemic closures. Further, when petitioner submitted to drug screens, she consistently tested positive for marijuana.

Dr. Edward Baker testified regarding petitioner's parental fitness and psychological evaluation. Per his testimony, petitioner was unable to control her emotions which led to her inability to appropriately discipline the children. During the evaluation, petitioner disclosed past methamphetamine and marijuana use. Dr. Baker diagnosed petitioner with borderline personality disorder, with indications of poor mood stability and relationship impulsivity. In the evaluation, Dr. Baker opined that with treatment, petitioner's prognosis for achieving minimally adequate parenting was "guarded." Dr. Baker was questioned about petitioner's lack of intensive counseling and he opined that the short amount of time petitioner had spent in counseling was insufficient to address her deficits.

Next, petitioner's therapist testified that petitioner's first counseling session was in August of 2019. However, petitioner only attended six counseling sessions. According to the therapist, petitioner's failure to participate was not related to the COVID-19 pandemic as services were still offered and petitioner chose not to attend appointments. Most importantly, the therapist testified that petitioner did not acknowledge her role in the abuse and neglect of the children that led to the filing of the petitions and admitted to "self-medicating" with cannabidiol ("CBD") and marijuana.

The parenting provider testified regarding petitioner's supervised visitations and stated that although some visits went well, petitioner often yelled at the children, could not control them, and that some visits were chaotic. Petitioner appeared overwhelmed during visits when she was alone. Another provider testified that petitioner was doing well with attending therapy, seeking employment, and testing negative for marijuana when the children were returned to her care in December of 2019.

M.B., the father of M.H., testified that once M.H. was returned to him M.H. disclosed that petitioner slept all the time and would lock W.S. in another room in her pack-and-play without supervision. Then nine-year-old M.H. reported that petitioner placed the responsibility of childcare of his half-siblings on him. M.B. stated that M.H. was in therapy, receiving medication for Attention Deficit Hyperactive Disorder, and did not want to speak with petitioner. Finally, the CPS worker testified that petitioner had complied with some aspects of her improvement period but had not completed some requirements, such as counseling. She further stated that petitioner tested positive for marijuana sporadically throughout the proceedings. Most importantly, she stated that once the children were returned to petitioner's care, she received several referrals, which eventually led to the second removal of the children. In the worker's opinion, after nearly three years of services and CPS involvement with the current case, petitioner had not addressed the conditions of abuse and neglect that led to the initial petition's filing.

Finally, petitioner moved for the children to be reunified with her and the petition dismissed. She stated that it was difficult being a single parent but that she had "gotten better" at parenting the children. She admitted using CBD oils but downplayed her marijuana use and

3

made various excuses for the referrals that led to the children's second removal. She regretted letting the children get out of the house again and having CPS come back to take the children. Petitioner stated that she had fully complied with all of the terms and conditions of her improvement period, and, therefore, the children should be returned to her custody.

After hearing the evidence, the circuit court found that petitioner's improvement period had been unsuccessful as she failed to retain and apply any knowledge or skills obtained through the DHHR's services. The circuit court found that petitioner had not "truly acknowledged" the abuse and neglect the children sustained while in her care, thus making correcting the problem an "exercise in futility at the children's expense." The court noted that each child had been in foster care for a significant period of time and had been in several different placements and highlighted the children's need for permanency. The circuit court concluded that reunification was not in the children's best interests. Ultimately, the circuit court found that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future and that that termination of petitioner's parental rights was necessary for the children's welfare. Petitioner now appeals the circuit court's April 8, 2021, order terminating her parental rights.[4]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for reunification. She asserts that the termination of her parental rights did not serve the children's best interest as they are bonded with petitioner. Petitioner contends that the court found her "fit

---

[4]M.H.'s father completed an improvement period, the child was reunified with the father, and the father was dismissed from the proceedings. D.H.'s father's parental rights were also terminated below. The father of E.S., L.S., and W.S. had his parental rights also terminated below. The permanency plan for E.S., L.S., W.S., and D.H., is adoption by their foster families.

and proper" in December of 2019, when the children were returned to her care. According to petitioner, the drug screens could not distinguish between petitioner's CBD use and illicit marijuana.[5] Additionally, petitioner's therapist testified at the dispositional hearing that it was normal for her to be overwhelmed parenting so many children while having anxiety. Petitioner also claims that the evidence presented at the final dispositional hearings showed that she made gains in parenting and disciplining the children and was not a safety concern. Finally, petitioner argues that the court erred in finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future and that the termination of her parental rights was necessary for the children's welfare. We disagree.

Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) provides that there is no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, petitioner clearly failed to respond to a reasonable family case plan designed to prevent further abuse and neglect of the children as evidenced by the children's second removal. As mentioned above, the circuit court attempted to reunify the four oldest children with petitioner in December of 2019. However, CPS received three more referrals regarding petitioner over the next three months and the children were removed again due to the same issues of petitioner's lack of supervision and marijuana use. Because petitioner failed to respond to a reasonable family case plan, the circuit court did not err in finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future.

Although petitioner asserts that she is bonded with the children, we note evidence to the contrary in the record. Starting with D.H., petitioner has absolutely no bond with the child as D.H. has never been in her care and has remained with the same foster family since her birth. Regarding the oldest child M.S., the record indicates that the child requested not to speak with

---

[5]Petitioner provides no support for this contention, fails to cite to the record, and makes no further argument regarding this issue. As such, this issue is inadequately briefed for appeal, both in terms of complying with this Court's rules and in terms of attempting to establish an alleged error by the circuit court. Specifically, petitioner fails to cite to a single legal authority that would entitle her to relief in this regard, which is in violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure. As this Court has held, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted).

petitioner. Additionally, petitioner was charged with child abuse creating risk of injury after she struck E.S., and some of the other children expressed fear of petitioner after witnessing this abuse. The record shows that E.S., L.S., and W.S., all at ages under five, have been found wandering in the neighborhood while petitioner slept during the day. As such, termination of petitioner's parental rights not only protected the children from further abuse and neglect, but also provided permanency for the children. As the circuit court noted, the case had been pending since 2018 and petitioner was given ample time to address her issues. Additionally, the record shows that petitioner has had CPS involvement since the birth of the first child in 2011. This Court has held:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4. Further, "[e]nsuring finality for these children is vital to safeguarding their best interests so that they may have permanency and not be continually shuttled from placement to placement." *In re Cesar L.*, 221 W. Va. 249, 258, 654 S.E.2d 373, 382 (2007). In light of the above, we agree with the circuit court that termination of petitioner's parental rights was necessary for the children's welfare.

Finally, insomuch as petitioner argues that she should have received a less-restrictive alternative disposition, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the record fully supports a finding that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the children's welfare, we find no error in the proceedings below.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 8, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2022


**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton